UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| KATHY GANGER, | ) |
| | ) |
| Claimant, | ) |
| | ) |
| vs. | ) Case No. 6:14-CV-077-CLS |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Claimant, Kathy Ganger, commenced this action on January 14, 2014, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly evaluated her credibility and complaints of subjective symptoms, and improperly considered the opinion of her treating physician. Upon review of the record, the court concludes that these contentions lack merit, and the Commissioner's ruling is due to be affirmed.

To demonstrate that pain or another subjective symptom renders her disabled, a claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If an ALJ discredits subjective testimony of pain, "[s]he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)) (alteration supplied).

The ALJ in the present case properly applied these legal principles. She found that claimant's medically determinable impairments could reasonably have been expected to produce the symptoms claimant alleged, but that claimant's statements

concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.[1]  This conclusion was in accordance with applicable law.  *See Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) ("*After* considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)) (emphasis supplied).

The ALJ also adequately articulated reasons to support her findings.  The ALJ considered that, when claimant stopped working in 2006, it was not because of pain, but because the man she was living with wanted her to stop working.[2]  She also reasoned that the "medical records fail to document a sufficient objective basis to accept some of the claimant's allegations resulting in functional limitations as wholly credible."[3]  Claimant challenges that conclusion based on written reports of November 15, 2010 MRI examinations of her knee, shoulder, lumbar spine, and hip. Plaintiff reported medial knee pain with limited range of motion but no known injury. The MRI revealed advanced medial compartment arthropathy with loss of articular cartilage, medial condylar spurring, and presumed partial meniscectomy.  She suffered a chronic MCL strain, but her lateral meniscus, ACL, PCL, and LCL all were

---

[1] Tr. 14.
[2] Tr. 14-15.
[3] Tr. 15.

normal. With regard to her shoulder, she reported pain and limited range of motion, but no injury. The MRI revealed a likely "gross abruption of the supraspinatus tendon," with the "free edge of the tendon . . . approximately at the AC joint"; AC joint arthropathy; a full thickness tear of approximately half the infraspinatus tendon with only one-centimeter retraction; and severe posterier labral degeneration and tearing with anterior superior tearing as well. With regard to claimant's lumbar spine, she had reported low back pain, right hip pain, and leg pain for six months. The MRI revealed disc bulging without herniation at L1-2; a lesser disc bulge with mild facet prominence and left lateral recess narrowing at L2-3; slight asymmetry and facet arthropathy at L3-4; severe right lateral recess stenosis with severe stenosis of the medial portion of the right exit foramen at L4-5; and a normal appearing disc with facet arthropathy and only slight lateral recess narrowing at L5-S1. With regard to claimant's hip, she reported right hip pain with pain and numbness of the right thigh for six months. The MRI findings were normal, other than mild symmetrical degenerative changes.[4] In addition, claimant's treatment records revealed reports of pain at a level of 8-10 and "palpable spasms" of the cervical and lumbar spine from 2009 to 2012.[5]

Without question, those records demonstrate the existence of medical

---

[4] Tr. 215-19.
[5] *See* Tr. 223-27, 229-31, 255-62, 297, 303, 312-17.

conditions that *could* cause some impairment. The ALJ acknowledged that fact.[6] But it is not the mere existence of an impairment, or of a medical condition, that determines disability. Instead, the relevant consideration is the effect of claimant's impairment, or combination of impairments, on his ability to perform substantial gainful work activities. *See* 20 C.F.R. § 404.1505(a) (defining a disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). *See also Bowen v. Yuckert,* 482 U.S. 137, 146 (1987) ("The [Social Security] Act 'defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.'") (quoting *Heckler v. Campbell,* 461 U.S. 458, 459-60 (1983)). Here, the ALJ relied upon the report of the consultative physician to determine that her conditions did not result in disabling *functional* limitations.

Dr. Frank Gillis conducted a consultative examination on January 19, 2012. Claimant reported pain in her right hand and shoulder that prevented her from lifting objects above her head, pain in her lower back and hip that "occasionally" prevented her from sitting, and pain in her left knee that prevented her from standing for long

---

[6] *See* Tr. 15 ("Medical evidence shows the claimant has underlying medical conditions . . . .").

5

periods of time. Dr. Gillis's examination revealed no spasms or deformities in claimant's back. Claimant was able to get on and off the examination table without difficulty. Her gait was asymmetrical but without ataxia or spasticity. She could not completely squat to the ground and had to use the exam table for assistance. She performed the heel/toe walk, but she was unsteady. Her neurological findings were normal. Claimant had no limited range of motion, other than the extension in her dorsolumbar spine, and abduction and forward elevation in her shoulder joints. Her dexterity and grip strength were normal. Dr. Gillis's diagnoses were right shoulder pain, decreased range of motion in the shoulder joint, low back pain, and tobacco abuse. The ALJ concluded that Dr. Gillis's report supported her residual functional capacity finding of an ability to perform a limited range of light work. That conclusion was supported by substantial evidence.

Moreover, the ALJ's reliance on Dr. Gillis's report distinguishes this case from the unpublished opinion of the Eleventh Circuit Court of Appeals in *Snyder v. Commissioner of Social Security,* 330 F. App'x 843 (11th Cir. 2009), which claimant contends requires this court to reject the ALJ's opinion. In *Snyder*, the Eleventh Circuit concluded that, in evaluating the claimant's subjective complaints of pain, the ALJ below

> properly applied the pain standard by finding that Snyder's underlying medical condition of Hepatitis C reasonably could be expected to

> produce the alleged symptoms. However, the ALJ failed to give explicit and adequate reasons for discrediting Snyder's testimony about the severity of her pain and fatigue. The ALJ merely stated that Snyder's testimony as to the intensity, persistence and limiting effects of her symptoms was "not entirely credible" and that "[h]er allegations of disabling pains in her legs, feet, and hands are not supported by the objective medical evidence of record to the extent alleged." The ALJ did not point to any objective medical evidence contradicting Snyder's pain allegations, but appears to discredit them based on a lack of objective medical evidence. The ALJ gave no further explanation for his decision to discredit Snyder's testimony.

*Snyder*, 330 F. App'x at 848 (alteration in original). The Eleventh Circuit held that "[s]uch a broad credibility finding is not sufficient under our precedent," because "the ALJ cannot discredit [a claimant's] testimony as to the intensity or persistence of her pain and fatigue *solely based on the lack of objective medical evidence.*" *Id.* (citations omitted, alterations and emphasis supplied). Here, the ALJ's decision to reject claimant's subjective complaints was not based *solely* on a lack of objective evidence. It was also based upon the findings of the consultative examiner and claimant's inconsistent testimony about why she stopped working. Those differences, together with the fact that the *Snyder* opinion was not published and, therefore, is without precedential value or binding authority, do not persuade this court to reject the ALJ's opinion.

Finally, the ALJ was entitled to credit Dr. Gillis's opinion over that of Dr. Keith Morrow, claimant's treating physician. The opinion of a treating physician

7

"must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (alterations supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate:  the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are

8

consistent with other evidence as to claimant's impairments.").

Dr. Morrow submitted several statements regarding claimant's limitations. On a "Medical statement regarding knee problem for Social Security disability" form dated June 24, 2010,[7] Dr. Morrow indicated that claimant experienced chronic pain, stiffness, swelling, and tenderness; limitation of motion; instability; and joint space narrowing in both knees. Her pain was moderate to severe, and she could not work at all. She could stand and sit for only thirty minutes at a time, and could lift ten pounds on an occasional basis but no weight on a frequent basis. She could never stoop or climb ladders, and she could only occasionally bend, balance, and climb stairs.[8]

Dr. Morrow also completed a "Medical statement regarding hip problems for Social Security disability claim" on June 24, 2010. He indicated that claimant experienced chronic hip pain, chronic hip stiffness, limitation of motion of her hip, and inability to ambulate effectively. She could not work at all, and she could only stand and sit for thirty minutes at a time. She could lift ten pounds on an occasional basis but no weight on a frequent basis. She could never stoop or climb ladders, and she could only occasionally bend, balance, and climb stairs. Dr. Morrow

---

[7] The court notes that this form was completed prior to claimant's alleged onset date of November 18, 2010.

[8] Tr. 310.

characterized the pain claimant experienced as moderate to severe.[9]

Dr. Morrow also completed a Patient Functional Questionnaire on September 10, 2012. He stated that claimant experienced back pain with degenerative disc disease, foraminal stenosis, rotator cuff tear, depression, restless leg syndrome, COPD, hypertension, peripheral neuropathy, and osteoarthritis of the knees. Dr. Morrow indicated that claimant could sit continuously for one hour, stand continuously for fifteen minutes to a half-hour, and walk continuously for fifteen minutes. During an eight-hour workday, claimant could sit for a total of two to three hours, stand for a total of one hour, and walk for a total of one hour. She would have to lie down for a total of three hours each day in order to alleviate her pain. Claimant would be expected to miss more than fifty days of work each year due to her symptoms.[10]

Also on September 10, 2012, Dr. Morrow provided sworn testimony during which he was questioned by claimant's attorney.[11] Dr. Morrow testified that a person experiencing paraspinal muscle spasms would not be able to perform work activities or activities of daily living.[12] He also stated that the opinions expressed in the Patient Functional Questionnaire were based upon the medical history he received from

---

[9] Tr. 311.
[10] Tr. 264-65.
[11] Tr. 266-90.
[12] Tr. 275.

claimant, his physical examinations of her, and the diagnostic tests that had been performed.[13] After reviewing claimant's MRI results, Dr. Morrow concluded that she had "multilevel disk problems in her back, which are starting to put pressure onto the nerves into her right hip and leg."[14]  According to Dr. Morrow, nerve pain is "unrelenting" and "extremely hard to control."[15]  Dr. Morrow also testified that claimant's pain complaints should be expected as a result of her medical conditions, and he confirmed that claimant had never had surgery to correct any of those conditions.[16] He concluded that there was no way claimant could have worked in any occupation on a sustained basis since her alleged onset date of November 18, 2010.[17]

The ALJ afforded Dr. Morrow's assessment only little weight "because he did not actually see the claimant during the period at issue, with treatment at his clinic being performed by the nurse practitioner . . . ."[18] Claimant does not contest the legal sufficiency of that finding; instead, she asserts that it is factually incorrect. According to claimant, even though she regularly saw the nurse practitioner instead of Dr. Morrow, Dr. Morrow still reviewed all of claimant's treatment notes and "signed off" on each of her visits.  Moreover, "Dr. Morrow, as the supervisor of his

---

[13] Tr. 281.
[14] Tr. 284.
[15] Tr. 285.
[16] Tr. 287-88.
[17] Tr. 288.
[18] Tr. 15.

nurse practitioners, was ultimately responsible for [claimant's] case and would obviously be conversant about her condition."[19]

The court does not agree with claimant that a doctor reviewing and "signing off on" a nurse practitioner's treatment notes is the same thing as actually providing hands-on treatment to a patient. It was legitimate for the ALJ to consider the fact that Dr. Morrow did not regularly provide personal treatment to claimant when she was determining how much weight to give to Dr. Morrow's assessments. *See* 20 C.F.R. § 404.1527(c)(2) (providing that the ALJ should consider the extent of the treatment relationship between the doctor and patient). The ALJ also was entitled to give more weight to Dr. Gillis's assessment than she gave to Dr. Morrow's, because she found that Dr. Gillis's opinion was more consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4) (providing that the ALJ should consider whether a doctor's opinion is consistent with the record as a whole).

In summary, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

---

[19] Doc. no. 12 (claimant's brief), at 14 (alteration supplied).

DONE this 4th day of December, 2014.

                                                                            /s/ Lynwood Smith
                                                                            United States District Judge